IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Harriett L. Bolton, ) | C/A No. 0:10-1426-RBH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Harriett L. Bolton ("Bolton"), brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### ADMINISTRATIVE PROCEEDINGS

In April 2007, Bolton applied for SSI. Bolton's application was denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on May 28, 2009 at which Bolton appeared and testified and was represented by Everett Garner, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated June 23, 2009 finding that Bolton was not disabled. (Tr. 17-25.)

Bolton was born in 1963 and was 43 years old at the time of her alleged onset date. (Tr. 32.) She has an eleventh-grade education and has past relevant work experience as a housekeeper, bus driver, janitor, and manager trainee. (Tr. 32, 175, 195.) Bolton alleges disability since February 6,

2007 due to Human Immunodeficiency Virus/Acquired Immune Deficiency Syndrome ("HIV/AIDS"). (Tr.171-72.)

The ALJ made the following findings and conclusions:

1. The claimant has not engaged in substantial gainful activity since February 6, 2007, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: HIV+; fallen arches; and insulin-dependent diabetes mellitus (20 CFR 416.920(c)).

    \* \* \*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled light work as defined in 20 CFR 416.967(b).

    \* \* \*

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

    \* \* \*

6. The claimant was born on [REDACTED], 1963 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

    \* \* \*

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

    \* \* \*

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 6, 2007, the date the application was filed (20 CFR 416.920(g)).

(Tr. 19-25.)

Bolton filed an appeal and submitted additional evidence for consideration, which the Appeals Council admitted into the administrative record. The Appeals Council denied Bolton's request for review on April 21, 2010, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age,

education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Bolton argues that the ALJ's decision that Bolton was not under a disability was not supported by substantial evidence. In support of this assertion, Bolton argues that the ALJ erred in

discounting Bolton's credibility and in discounting the opinion of Dr. Elizabeth Darragh.  Further, she appears to argue that the ALJ erred in determining that she "had no vocationally relevant past work experience" and in failing to ask the vocational expert which jobs Bolton could perform.  (Pl.'s Br., ECF No. 11 at 6.)

## DISCUSSION

**A.     Bolton's Credibility**

Bolton argues that the ALJ erred in concluding that Bolton's testimony lacked credibility. Specifically, Bolton argues that, in reaching this conclusion, the ALJ relied solely on a one-time psychological evaluation by Dr. A. Nicholas DePace.

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process."  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  In this matter only the second step is at issue,[1] during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects her ability to work."  Id.  In making this determination, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p.  "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence."  Id. (emphasis added).  "This is not to say,

---

[1] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."  Craig, 76 F.3d at 594 (internal quotation omitted).

however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i)     Your daily activities;
> (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii)   Precipitating and aggravating factors;
> (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

The ALJ summarized Bolton's examination by Dr. DePace on January 16, 2008 and noted that Dr. DePace observed that Bolton had not put forth appropriate effort during her psychological assessment and appeared to exaggerate her symptoms, and that Dr. DePace concluded that Bolton had engaged in malingering of memory and cognitive deficits. (Tr. 21; see Psychological Evaluation, Tr. 283-87.) Contrary to Bolton's argument, however, the ALJ discussed several other factors that contributed to his conclusion that Bolton's testimony lacked credibility. For example, the ALJ noted that the record and testimony was inconsistent with regard to Bolton's history of incarceration.

Additionally, the ALJ found that Bolton's assertions that her impairments precluded her from being able to work were inconsistent with Bolton's ability to perform daily living activities and concluded that "[Bolton's] ability to perform such activities demonstrates that she has the capacity to use her upper and lower extremities and hands without significant limitations, and that she has the capacity to stand, walk, lift, carry, and move about without significant problems." (Tr. 23.) The ALJ also noted that at the hearing, Bolton walked without an assistive device; had no apparent difficulty sitting, standing, walking, or rising from a seated position; showed no sign of wasting syndrome or pain behavior; and sat for forty-five minutes with no obvious difficulty. (Tr. 22.)

Upon a thorough review of the record as a whole, the court finds that the ALJ did not err in his analysis of the credibility of Bolton's subjective complaints. See Craig, 76 F.3d at 595. In determining that Bolton's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ considered Bolton's subjective complaints in conjunction with her abilities to perform daily activities, the medical evidence, and the other evidence of record. Bolton has failed to demonstrate that the ALJ erred in finding that Bolton's subjective complaints are inconsistent with the record. See 20 C.F.R. § 416.929(c)(3); SSR 96–7p; Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints); see also Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997) (finding an ALJ did not err in considering evidence that a claimant exaggerated the severity of his symptoms as a factor in weighing a claimant's credibility). Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not

"undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Based on the record as a whole, the court cannot say that the ALJ's determination as to Bolton's credibility is not supported by substantial evidence.

**B.     Treating Physician**

Bolton also argues that, when determining her residual functional capacity ("RFC"), the ALJ erred in rejecting the opinion provided by one of Bolton's treating physicians, Dr. Elizabeth Darragh. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

The ALJ found that Bolton retained the RFC to perform light work, but limited her to unskilled work due to the possible side effects of her medications that may decrease her ability to perform detailed work. (Tr. 23.) With regard to Dr. Darragh, the ALJ discussed that the record

contained treatment records from February and March 2007.[2] Specifically, Dr. Darragh noted in March 2007 that Bolton's HIV infection caused wasting syndrome, multiple boils, diarrhea, memory problems, and a decreased ability in concentration. (Tr. 21, 225, 228.)

The ALJ stated that "the evidence does not indicate [Bolton] suffers from recurrent infections, wasting syndrome, skin conditions, hematologic abnormalities, diarrhea, cardiomyopathy, nephropathy, or neurological abnormalities, or any other manifestations of HIV infection" and that "[t]he treatment records do not indicate [Bolton] had significant complications or severe symptoms related to HIV." (Tr. 22.) Specifically, the ALJ noted that treatment records from Richland Community Health Care, where Bolton was seen on multiple occasions by treating physician Dr. Adebajo from August 2007 through May 2009, did not indicate that Bolton had significant complications or severe symptoms related to HIV. (Tr. 21.) The ALJ also observed that Bolton's weight has remained stable from the month of her alleged onset date through the date of the hearing before the ALJ. (Tr. 21, 22.)

Bolton argues that the ALJ relied on Dr. DePace's opinion to conclude that Bolton lacked credibility and discredit Dr. Darragh's opinion. However, as stated above, Bolton has failed to demonstrate that the ALJ's finding regarding Bolton's credibility was not supported by substantial evidence or controlled by an error of law. Further, although the ALJ found that Bolton's severe impairments included being HIV positive, fallen arches, and insulin-dependant diabetes mellitus, Bolton has failed to show that the ALJ erred in finding that Dr. Darragh's opinion that Bolton's HIV infection caused wasting syndrome, multiple boils, diarrhea, memory problems, and a decreased

---

[2] Although the plaintiff's reply brief refers to Dr. Darragh as a "long term treating physician" who had "provided the bulk of Plaintiff's treatment at the Free Medical Clinic," the record shows that Bolton was seen by Dr. Darragh on only two occasions in February and March of 2007. (Compare Pl.'s Reply Br., ECF No. 13 at 2 with Medical Records, Tr. 223-30.) The parties have not directed the court to any evidence of additional medical care provided by Dr. Darragh.

ability in concentration is not supported by medical evidence. See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); see also Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001) ("An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations."). Accordingly, the court finds that Bolton has failed to demonstrate that the ALJ's evaluation of Dr. Darragh's opinion was unsupported by substantial evidence or reached through the application of an incorrect legal standard.

### C.     Remaining Issues

With regard to Bolton's contention that the ALJ erred in stating that "[t]he claimant does not have any past relevant work experience," (Tr. 24), the court finds that to the extent this was error it was harmless. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted); Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases). At Step Four of the sequential evaluation, the ALJ must determine whether the claimant can perform her past relevant work. If she cannot or if she does not have any past relevant work, then the burden shifts to the Commissioner to establish that the claimant has the RFC, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. In this case, the parties do not appear to dispute that Bolton satisfied her burden at Step Four, and the ALJ found that she could not return to her past relevant work.

Furthermore, to the extent that Bolton argues that the ALJ erred in failing to ask a vocational expert whether jobs exist in the national economy that she could perform, the court finds this argument to be without merit, as the ALJ properly relied upon the medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2 (the "Grids"). See Heckler v. Campbell, 461 U.S. 458, 461 (1983). The Grids consist of three "Tables," each representing a different residual functional capacity, including sedentary (Table 1), light (Table 2), and medium work (Table 3). Id. Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." Id. As stated above, in this case, the ALJ determined that Bolton retained the RFC to perform the full range of light work but, due to possible side effects from her medications, limited her to unskilled work. (Tr. 24.) Accordingly, the ALJ did not err in relying on the Grids. See 20 C.F.R. § 416.969a(b) (stating that when a claimant suffers *solely* from an exertional limitation and her situation falls precisely within one of the Grid categories, the Grid is conclusive).

### RECOMMENDATION

For the foregoing reasons, the court finds that Bolton has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

                                                                                         Paige J. Gossett
                                                                                         UNITED STATES MAGISTRATE JUDGE

April 26, 2011
Columbia, South Carolina.

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).